DETERMINED IN

# THE SUPREME COURT

OF THE

## TERRITORY OF ARIZONA,

### JANUARY TERM, 1878.

---

## WILLIAM COLE *v.* CURTIS C. BEAN AND MARY M. BEAN, HIS WIFE.

RIGHT TO TRIAL BY JURY IN EQUITY CASES.—In cases of purely equitable cognizance it is entirely discretionary with the judge whether or not he will call in the aid of a jury to assist him in determining special issues of fact framed by the parties to the action.

PERSON NOT AN EXPERT MAY TESTIFY AS TO EFFECT OF LIQUOR upon a particular person with whom he is acquainted.

DECLARATIONS OF AGENT, ADMISSIBILITY OF.—Where some evidence of the existence of an agency has been given, it is competent to give in evidence the acts and declarations of the agent respecting the subject-matter of his authority.

APPEAL from the district court of the third judicial district, county of Yavapai. The facts are stated in the opinion.

*Thomas Fitch,* attorney for the appellant.

*Rush* and *Wells,* attorneys for the respondents.

No briefs on file.

By Court, French, C. J.:

The hearing of the appeal in this cause in the supreme court without the usual copies being furnished was had by agreement of the parties and consent of the court, to save the hearing of the appeal from going over the yearly term. No copy of the transcript has been furnished since the hearing; I am therefore without a transcript of record in this case. On the decision of the case in the district court, I filed an opinion of some length, which by statutory provision, and also by stipulation, has been embodied in the transcript and goes with the record in this case. That is the opinion of a single district judge at *nisi prius,* but after the able, elaborate, and exhaustive arguments of appellants in the supreme court, I have found nothing in that opinion which, in my capacity as one of the justices of the higher court, I wish to change.

The present opinion, under these circumstances, must be somewhat summary. At the commencement of the hearing of this case in the district court, counsel for defendant presented certain special questions, and asked that these questions be submitted to a jury. If the case were one at law instead of equity, it would not be permissible for one party to the action to frame certain specific issues or questions, and ask a jury to determine these against the objection of the other party to the action, and without the sanction of the court.

Such a mode of proceeding would be in derogation of the rights of the opposite party, and a trenching on the powers and functions of this court. But the present is an equity proceeding purely. Our statutory enactments in this regard conform to those of California, whose courts have uniformly denied the right to trial by jury in equity cases. In the United States courts the same rule has been established. Chief Justice Marshall, in *Harding* v. *Handy*, 6 Curt. 534, says: "An issue, indeed, might have been directed; but we do not think it a case in which this course ought to have been pursued. The degree of weakness, or of imposition, which ought to induce a court of chancery to set aside a conveyance is proper for the consideration of the court itself; and there seems to be no reason for the intervention of a jury, unless the case be one in which the court would be satisfied with the verdict, however it might be found. A

verdict affirming the capacity of W. C. to execute these deeds on the ninth day of May, 1805, could not, we think, have been satisfactory to the court, and it was, consequently, not necessary to refer the question of competency to a jury."

It is generally impracticable for the chancellor to know or determine, before at least a partial hearing, whether a jury would be proper or not.

The objection taken to the testimony of Hattie Wells, as to Cole's condition, that is, the degree and intensity of his intoxication on the latter part of October and first of November, and extended to the testimony of many other witnesses on this point, can not, I think, be sustained on reason or authority.

An examination of cases like the present will show that where the question was the mental condition at a certain day, the testimony, both under and without objection, has extended back not a few days only, but for months and years.

It is also objected that testimony of persons not experts was received as to the effect of liquor on Cole. I think this testimony is proper. If the witness, from long-continued and intimate association, knows the facts from his personal intercourse, his testimony is proper. An expert can say what the general effects would be—can testify as to the effect of liquor, drugs, poison, or food, upon persons generally. The expert can say, for example, that the common article of food cheese is a common article of diet, wholesome and agreeable to people in general, but to some persons the most detested and abhorrent, and fatal to health and even life.

The witness who speaks from his own personal knowledge knows to which of these classes the person concerning whom the scrutiny is made belongs. In other words, he knows the effect of that article of food upon the particular individual inquired about much better than the mere expert.

So of drugs and poisons: the witness who speaks from personal knowledge can tell the effects on the particular person more surely than the expert, who lacks these personal observations; the evidence is more direct and positive, and thus more decisive.

Elaborate objections were taken by defendants to the declarations of Mr. Bean, made after the transaction of the deed, and because these declarations as to the transaction were

made after Bean, acting as the agent of his wife, had procured the deed in question. I am entirely clear that the objection that these declarations ought not to be received as evidence, because not made at or about the very time of the execution of the deed (*dum opus fervet*), can not be sustained. Mr. Bean was the agent of his wife before these transactions, and continued to be her agent all the time from the time of the execution of the deed up to the time of the commencement of the suit. When these declarations were made, he was in the very midst of other transactions of and concerning and connected with the subject-matter of the main transaction, viz., the deed between his wife and the plaintiff. If any one thing is more clear than another, it is this, that all this business was entirely conducted and transacted by Mr. Bean, as he testifies, constantly as the agent of his wife. The objection, therefore, that these declarations form no part of the *res gestæ* has no application at all on this point.

The only question necessary to consider here is, Had Mr. Bean, before he made these declarations, ceased to be the agent of Mrs. Bean? Had his authority as her agent in this business ceased? The admissibility of the declarations must be determined solely by the answer to these questions.

The law applicable to this point is well expressed in the case of *Stewartson* v. *Watts*, 8 Watts, 392; also found in Dunlap's Paley on Agency, edition of 1856, p. 250, note. I quote from the note syllabus of the case in Watts: "When some evidence of the existence of an agency has been given, it is competent to give in evidence the acts and declarations of such agent respecting the subject-matter of his authority; and whether his agency had then ceased or was continued must be submitted as a fact to the jury, with the direction that if his authority had ceased, his acts and declarations are to be disregarded."

It is not claimed that Mr. Bean's acts or authority as agent of Mrs. Bean had ceased at or before the time of these declarations. In fact, it affirmatively appears from the record that he continued to act as such agent.

Judgment affirmed.

TWEED, J., concurred.

PORTER, J., expressed no opinion.